Curran, Dennis J., J.
Introduction
William R. Mitchell, a state prisoner, filed this action for medical malpractice relating to medical care he received. The matter came before me principally on the defendants’ motion for summary judgment. After reviewing the defendants’ motion and supporting and opposing materials filed by the parties and a hearing, this motion is ALLOWED.
Procedural Background
Mr. Mitchell filed this medical malpractice action, pro se, on October 15, 2004. He alleged that a physician failed to diagnose a leg infection, causing him pain and suffering. He was diagnosed as having cellulitis. [1] The defendants denied liability, stating that Mr. Mitchell had been given antibiotics, underwent x-rays, several CT scans, a bone scan, underwent an open debridement of his tibia, and was also referred for an orthopedic consultation at another institution. They further countered that Mr. Mitchell’s underlying hep *428 atitis C and failure to comply with wound care instructions caused him to suffer his pain.
This case is now over five years old. The original Tracking Order required that judgment was to have entered over three years ago. A few words are necessary about this case’s procedural history.
The defendant physician requested a medical tribunal on December 30, 2004 which found, on October 14, 2005, that there “[was] not sufficient evidence to raise a legitimate question as to liability appropriate for judicial inquiry” as to either the defendant physician or the UMass Medical School. Mr. Mitchell was allowed to waive the posting of his bond. The defendants asked for reconsideration, which was denied.
Because he had no expert witness — and apparently never had one — Mr. Mitchell then moved for an Order requiring the Commonwealth to pay for one. One session judge denied this motion, stating:
There are presently no funds appropriated by the legislature to cover the costs of counsel in a case such as this. If there is to be a recognition of a right to counsel in a civil case such as this, it must be done as a result of an order by the Supreme Judicial Court which has yet to rule that such a right exists. For the[se] reasons, the motion is DENIED.
(See paper number 56.)
On April 25, 2007, Mr. Mitchell filed another motion for funds to hire an expert witness. A second session judge denied this motion, stating:
This court will not appoint an expert in this case, therefore, the portion of the plaintiffs motion requesting the court appoint an expert is DENIED.
(See paper number 91.0.)
On September 21, 2009, Mr. Mitchell filed a third motion asking — yet again — that the Court compel the Commonwealth to pay for an expert witness. A third session judge denied this motion as well, stating:
This motion has been addressed previously by this Court and denied. There is no basis for reconsideration of that Order.
(See paper number 100.)
On December 22, 2009, over five years after this case’s filing, Mr. Mitchell’s Pretrial Memorandum[2] stated, as to expert witnesses: “It is not clear at this time if an expert will be appointed, but if one is, then Defendants are free to depose the expert at their convenience.” (See page 7 of the plaintiffs Pretrial Memorandum.)
A week later, on December 29, 2009, the third session judge (Kaplan, J.) also scheduled a final pretrial conference for the next week, stating: “[The] pretrial conference will offer an opportunity to address all outstanding issues and set a schedule for disposition of this old case.” (Emphasis in original; see paper number 104.) At that conference, Mr. Mitchell’s various and sundry motions and the defendants’ motion for summary judgment were heard. Only the defendants’ motion for summary judgment requires exposition.
DISCUSSION
The defendants’ summary judgment motion raised three issues, each of which is fatal to Mr. Mitchell’s case.
The Failure to Prove Causation
The defendants claim that Mr. Mitchell could not prove causation, an essential element of his case. He had no expert witness and thus, was unable of proving that the defendant physician deviated from the acceptable standard of care and how such deviation caused him injuries. See Harlow v. Chin, 405 Mass. 697, 702 (1989). As detailed above, Mr. Mitchell was afforded over five years’ opportunity to obtain an expert witness. He has never been able to do so, ab initio; indeed, his inability to do so continued through the Pretrial Conference. This failure triggers the obvious result. See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986) (“The moving party is ‘entitled to a judgment as a matter of law’ because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof’).
The Failure to Exhaust Administrative Remedies
Both federal (42 U.S.C. sections 1983, 1985 and 1988) and state law (G.L.c. 127, sections 38E-38H) require that a prisoner exhaust administrative remedies before filing suit. The former statute is quite specific: “No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. section 1997(e)(a) (emphasis added). Similarly, the state statutoiy requirement has been upheld as an effort to limit frivolous or bad faith litigation. Longval v. Superior Court Department of the Trial Court, 434 Mass.718, 719 (2001).
There was, of course, a grievance process available to Mr. Mitchell, which may be found in the UMass Correctional Health Department of Correction-Clinical Grievance Mechanism. Mr. Mitchell did file a grievance on March 20, 2004 asking about the status of obtaining a bone scan. This was considered Step 2 of the grievance of the process. The UMass Correctional Health Services Administrator replied that the scan had been ordered. The bone scan did, in fact, occur two days after the grievance was filed, that is, on March 22, 2004. Mr. Mitchell failed to appeal this issue to the UMass Correctional Health Center Medical Director, as required by Grievance Step 3, nor did he pursue the matter further by appealing to the Department of Corrections, as mandated by Grievance Step 4. In short, although Mr. Mitchell did express dissatisfaction with the treatment of his left leg, his complaint appears to have been resolved by the administration of the bone scan two days later.
*429 As is obvious, the exhaustion of administrative remedies requires pursuit of each grievance step, which did not occur here. These mandatory prerequisites to suit not having been met, this case must be dismissed.
The Failure to Prove Deliberate Indifference
As set forth in Estelle v. Gamble, 429 U.S. 97, 106 (1976), a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Those acts or missions require a culpable state of mind and must constitute “. . . an unnecessary and wanton infliction of pain" or be “. . . repugnant to the conscience of mankind.” Estelle at 105-06. See also DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991).
Mr. Mitchell can point to no evidence supporting his claim that the defendants possessed a culpable state of mind or desired to wantonly inflict pain. Instead, his treating physicians prescribed him four different antibiotics, gave him an antibiotic topical ointment, prescribed Motrin and Ibuprofen, had his leg cultured to determine whether he had an infection, had his leg x-rayed several times, performed a bone scan, ordered several MRIs, and referred him to the Shattuck Hospital for an orthopedic consultation. These actions are hardly the stuff of which a constitutional claim under the Eighth Amendment for deliberate indifference can plausibly be made. His failure to provide any factual basis for this claim mandates dismissal.
The Effect of a Nugatory Lawsuit on the Courts
Finally, several observations are in order.
Here, a state prisoner — armed with almost limitless time — has managed to ensnare 12 (twelve) judges and a Clerk’s Office staff and send them on a fool’s errand.
Judges ought not to serve as pen pals for state prisoners on cases so demonstrably without merit. Clearly, there are deserving prisoner cases, but this was not one — and never was. Limited judicial resources have been squandered; the Clerk’s office staff time has been wasted; in short, untold judge and clerk hours were spent chasing a case that never had a chance.
The toll of this disaster includes the following:
110 docketed pleadings;
12 pages of single-spaced docket entries; and
9 scheduled court events.
Moreover, the case file consumed:
3 (expandable) case jackets;
nearly a foot high of pleadings; and
nearly 30 pounds of paper.
With significant Superior Court session case loads (as of today, for example, this session has over 825 active cases), this matter evinces the need to hew to the simple, but wise, principle articulated in the Third Amended Standing Order No.: 1-88 (A):
The concept of early and continuous judicial supervision and control is intended to enhance the quality of litigation and ensure that justice is fairly rendered.
As judges, we strive to be mindful of this principle in our daily professional lives: but this case reminds us of the need to continue to be vigilant in this regard. Other pending significant civil cases in the courts — -involving, as they often do — serious (or indeed, fatal) personal injuries, business disputes that cry out for expeditious resolution, or citizens who are simply at an emotional or financial end point about how to resolve a difficult dispute, cannot be reached. Our ability to serve the public, the bar and other litigants is compromised. Such cases undercut a judge’s ability to provide timely trial dates, timely dispositive motion hearings, and timely decisions.
ORDER
For the foregoing reasons, the defendants’ motions for summary judgment are ALLOWED. Judgment shall enter in their behalf forthwith.

Fortunately and ultimately, he suffered no permanent loss of function or use, as he acknowledged at oral argument on this motion.

This was styled a “Joint” Pretrial Memorandum, but contained only the plaintiffs position.